UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH DRIES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SPRINKLR, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Case No. C20-47-MLP<br><br>ORDER |

## I.   INTRODUCTION

This matter is before the Court on Plaintiff Joseph Dries's Motion to Exclude Defendant Sprinklr, Inc.'s Vocational Expert Shelley Lewis ("Plaintiff's Motion"). (Pl.'s Mot. (Dkt. # 65).) Defendant opposed the motion (Def.'s Resp. (dkt. # 72)) and Plaintiff filed a reply (Def.'s Reply (dkt. # 79)). The Court heard oral argument on December 14, 2020. (Dkt. # 84.) Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, Plaintiff's Motion (dkt. # 65) is DENIED, as explained further below.

ORDER - 1

## II. BACKGROUND

The Court recently laid out the background of this case in its recent Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. (*See* Order (Dkt. # 61) at 2-7.) In short, Dries is a previous employee of Sprinklr who was hired on August 30, 2018, to manage the sales element of Sprinklr's relationship with Microsoft. (*Id.* at 2.) On August 23, 2019, Dries's employment was terminated by Sprinklr. (*Id.* at 7.) After this Court's Order on Defendant's Motion for Summary Judgment, Plaintiff's remaining claims assert: (1) wrongful discharge, in violation of public policy; and (2) violations of the Washington Wage Payment Act (RCW 49.48) and Wage Rebate Act (RCW 49.52.050). (*Id.* at 21.)

Relevant to the instant matter, on February 18, 2020, Sprinklr served Dries with its First Interrogatories and Requests for Production, which included an interrogatory asking Dries to identify all of his job finding activities. (Griffin Decl. (Dkt. # 73) at ¶ 2; Lewis Decl., Ex. 2 (Dkt. # 74-1) at 23-27.) On April 3, 2020, Dries responded by identifying 112 jobs he applied for starting on October 7, 2019 and ending on March 23, 2020. (Griffin Decl. at ¶ 3; Lewis Decl., Ex. 2 at 23-27.) Based on the information provided by Dries, Ms. Lewis was secured by Sprinklr to testify as to whether he engaged in a reasonably diligent effort to secure new employment after he was fired.[1] (Lewis Decl. (Dkt. # 74) at ¶ 7.)

---

[1] In asserting a failure to mitigate damages, the defendant generally bears the burden of establishing plaintiff was not reasonably diligent in seeking substantially equivalent employment, and that with reasonable diligence, he could have obtained such employment. *See Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980), *cert. denied*, 451 U.S. 971 (1981); *see also Goldstine v. FedEx Freight Inc.,* 2020 WL 5500369, at *1 (W.D. Wash. September 11, 2020). The defendant also bears the burden of demonstrating the existence of substantially equivalent jobs at the time Plaintiff was searching for employment. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994).

ORDER - 2

1    Ms. Lewis is a vocational rehabilitation counselor who has been registered with the
2    Washington State Department of Labor and Industries since 1996 and certified as a vocational
3    expert by the American Board of Vocational Experts since 2012. (Rullman Decl. (Dkt. # 66-1) at
4    16; Lewis Decl. at ¶ 2.) Since 2016, she has previously testified in court and/or arbitration 17
5    times in western Washington, including twice previously in this Court, and provided deposition
6    testimony in several other cases. (Rullman Decl. at 4, 9-15; Lewis Decl. at ¶ 3.) Per her
7    declaration, Ms. Lewis has not previously been excluded from testifying as a vocational expert.
8    (Lewis Decl. at ¶ 3.)

9    Both in her declaration and at her expert witness deposition, Ms. Lewis described her
10   methodology for assessing an individual's employability. (Lewis Decl. at ¶¶ 7-8; *id.*, Ex. 4 at
11   187-188.) Ms. Lewis states she has employed her methodology in every case where she has been
12   asked to assess an individual's employment capacity, earning capacity, and/or job search
13   activities. (Lewis Decl. at ¶ 8.) To that end, Ms. Lewis identified eight different factors she
14   examines in assessing the reasonable diligence of an individual's job search, including: (1)
15   consistency and/or pattern of job search activities; (2) number of applications submitted; (3) the
16   period of time in which applications are submitted; (4) follow-up activities; (5) whether
17   interview were granted/attended; (6) the outcomes of interviews; (7) job offer status; and (8) the
18   applicability of jobs being applied for. (*Id.*) Ms. Lewis notes this methodology is consistent with
19   considerations regularly used by vocational experts to determine the diligence of job search
20   activities. (*Id.* at ¶ 9; *see* Lewis Decl., Ex. 1 at 2-21.) Ms. Lewis submits that she applied her
21   methodology to the information she was provided about Dries in arriving at her opinion. (Lewis
22   Decl. at ¶¶ 8-10.)
23

ORDER - 3

On September 21, 2020, Ms. Lewis issued her expert report. (Rullman Decl., Ex. A at 4.) In her report, Ms. Lewis acknowledged that Dries participated in job search activities between October 2019 and July 2020, ultimately submitting 125 employer contacts or submissions during this period. (*Id.* at 6.) Ms. Lewis opined Dries's application submissions were relatively consistent over that period, and included positions he was reasonably qualified to obtain, but it was unclear based on available information whether Dries was adequately performing follow-up activities.[2] (*Id.*) Ms. Lewis noted in her report there was a lack of documentation regarding Dries's job search activities, including evidence of interviews, the outcome of interviews, and any follow-up activity subsequent to interview. (*Id.* at 6-7.) Ms. Lewis noted that there were several emails in the submitted documents that requested further action from Dries on his applications, but it was unknown whether he had followed up with any requests for action. (*Id.*) Accordingly, Ms. Lewis opined "if it is determined that Mr. Dries did not or has not performed any of the above noted follow up activities, his job search could not be considered reasonably diligent." (*Id.* at 7.) In addition, Ms. Lewis mentions Dries was offered an account executive position within three months of his termination from Sprinklr by another technology company in December 2019, which she opines offered a similar role with comparable salary, but Dries turned it down due to concerns it would result in a "short stint" of employment. (*Id.* at 7; *see* Lewis Decl., Ex. 3 at 42-44.)

---

[2] Plaintiff submitted documents with the instant Motion concerning his follow-up activities after being rejected for a position at Google (Rullman Decl., Ex. C (dkt. # 66-3) at 2-13), which were included with his initial production to Sprinklr (Lewis Decl., Ex. 3 at 29-40). Ms. Lewis acknowledges in her declaration, that after re-reviewing the records of Plaintiff's job search, she overlooked Plaintiff's follow-up with Google. (Lewis Decl. at ¶ 22.) However, Ms. Lewis states that this was the sole documented instance where Plaintiff engaged in any follow-up activities and that she did not consider one follow-up email out of approximately 110 job applications to be reasonably diligent. (*Id.*)

ORDER - 4

Ultimately, Ms. Lewis concludes in her report:

> Based on the above outlined information, it does not appear that Mr. Dries participated in a reasonably diligent job search to include reasonable follow up activities and broadening his scope of potential job opportunities. Given his extensive experience in the technology industry and the number of positions that appear to be available for which he is qualified, it could have been reasonably predicted that Mr. Dries would have found replacement employment in a relatively short period of time, an estimated 3-6 months.

(Lewis Decl. at 8.) In her deposition, Ms. Lewis confirmed the above-referenced summary in her report provides an accurate reflection of the opinions she is prepared to testify to at trial. (Lewis Decl., Ex. B (Dkt. # 66-2) at 4.)

### III.  DISCUSSION

Federal Rule of Evidence 702 provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Before admitting expert testimony into evidence, the Court acts as a "gatekeeper" in determining the admissibility of expert testimony under Rule 702 by ensuring that the testimony is both "relevant" and "reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). Expert testimony is relevant where "the evidence logically advance[s] a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)). Testimony is reliable where it has "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). The proponent of expert testimony has

ORDER - 5

the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10; *see Lust v. Merrell Dow Pharms. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

The Supreme Court has noted the reliability inquiry is a "flexible one," and while the Supreme Court has suggested several factors helpful in determining reliability, trial courts are generally given "broad latitude in determining the appropriate form of the inquiry."[3] *United States v. Wells*, 879 F.3d 900, 934 (9th Cir. 2018) (quoting *Kumho*, 526 U.S. at 150); *see also Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (Rule 702 should be applied with a "liberal thrust" favoring admission) (quoting *Daubert*, 509 U.S. at 588); *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) (Rule 702 is "construed liberally" in considering admissibility of testimony based on specialized knowledge). Furthermore, the reliability inquiry favors admission of testimony as "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596). Finally, the Court notes that the reliability inquiry test does not seek to measure "the correctness of the expert's conclusions but the soundness of [his or her] methodology," and therefore, when an expert meets the standards established by Rule 702, "the expert may testify and the fact finder decides how much weight to give that testimony." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano,* 598 F.3d at 564-65).

---

[3] *Daubert* suggested several reliability factors a trial court may examine to determine the reliability of expert testimony, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; (4) the existence and maintenance of standards and controls; and (5) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592-94; *see also Mukhtar v. California State Univ., Hayward,* 299 F.3d 1053, 1064 (9th Cir. 2002).

ORDER - 6

Plaintiff argues Ms. Lewis's testimony should be excluded because: (1) Ms. Lewis's methodology fails to satisfy *Daubert* reliability factors; and (2) Ms. Lewis failed to consider facts and data necessary to engage in her proposed methodology, including information concerning Dries's follow-up activities to reasonably consider his diligence, his previous job duties to determine whether "substantially equivalent employment" was available to him, and failing to consider the stigma Dries faced after being fired or the effect of the COVID-19 pandemic on his job search. (Pl.'s Mot. at 2, 4-13.) Sprinklr counters Ms. Lewis's testimony is admissible because she applied a reliable methodology to the information submitted by Dries in forming her opinion, she had sufficient information to opine about the reasonableness of his job search, and Dries's claims regarding the sufficiency of the information employed by Ms. Lewis go to the weight of her testimony, and not its admissibility. (Def.'s Resp. at 2, 4-11.) Sprinklr additionally contends: (1) Dries failed to present evidence his termination from Sprinklr hindered his job search due to stigma or that the COVID-19 pandemic interfered; (2) excluding Ms. Lewis from testifying would unfairly prejudice Sprinklr's ability to prove failure to mitigate; and (3) at a minimum, the Court should conduct an evidentiary hearing to assess the reliability of Ms. Lewis's testimony before excluding her testimony. (*Id.* at 2, 12-13.)

Ms. Lewis's methodology and opinions are reliable under *Daubert* and Rule 702. As articulated in *Daubert*, the reliability inquiry generally favors the admission of expert testimony. *See Daubert*, 509 U.S. at 596. Despite Plaintiff's contention that Ms. Lewis's testimony fails to satisfy several of the factors suggested in *Daubert* (Pl.'s Mot. at 6-8), the Supreme Court has noted the list of factors in *Daubert* was "meant to be helpful, not definitive" and that it is generally left to the trial court's discretion on how to appropriately frame the reliability inquiry based on "the particular circumstances of the particular case." *See Kumho*, 526 U.S. at 150-51,

ORDER - 7

153. Here, Ms. Lewis is a well-qualified vocational rehabilitation specialist who has plainly articulated an established methodology for her opinion as a vocational expert. (*See* Lewis Decl. at ¶¶ 7-8; *id.*, Ex. 4 at 187-188.) The methodology employed by Ms. Lewis takes into consideration several factors regularly identified by vocational experts as pertinent in determining whether an individual was reasonably diligent in job search activities. (*See* Lewis Decl. at ¶ 9; *id.*, Ex. 1 at 2-21.) Though admittedly not a hard science, it is clear to the Court that Ms. Lewis relied on her specialized knowledge as a vocational expert in applying the facts submitted to her by Dries to the identified factors in her methodology in arriving at her opinion he was not reasonably diligent in his job search activities. As such, the Court concludes Ms. Lewis's opinion has a reliable basis in her relevant knowledge and experience as a vocational expert. *See Barabin*, 740 F.3d at 463; *Kumho*, 526 U.S. at 149.

Ms. Lewis additionally had sufficient information to render her opinion under Rule 702. In discovery, Sprinklr requested all information and documents relating to Dries's job search activities (*See* Griffin Decl. at ¶ 2; Lewis Decl., Ex. 2 at 23-27) to which Dries identified 112 jobs in his response and produced 148 pages of documents of his job search activities (Griffin Decl. at ¶ 3; Lewis Decl., Ex. 3 at 29-176.) Of the more than 100 jobs Dries applied for, the documents provided by him to Ms. Lewis demonstrate he only engaged in follow-up activities with Google—once in March 2020 and possibly again in April 2020—both in the form of emailing a Google recruiter after being rejected for a position.[4] (Lewis Decl. at ¶ 22, *id.*, Ex. 3 at

---

[4] From the submitted e-mail chain, Plaintiff reached out to a Google recruiter once in March 2020 to receive feedback after being rejected for a position but received correspondence that the recruiter was unable to give feedback due to Google policy. (Lewis Decl., Ex. 3 at 35-40.) It appears Plaintiff attempted to reach out to a different Google recruiter in April 2020 after being rejected for a different position but there is no record of a response. (Lewis Decl., Ex. 3 at 34.)

ORDER - 8

29-40.) Despite the omission of Dries's follow-up activities with Google in her report, the Court is satisfied Ms. Lewis's opinion is supported by sufficient information based on the lack of other documents in Dries's production evidencing additional or substantial follow-up activities.

Moreover, the record demonstrates Dries was broadly applying for sales executive positions within the technology industry, which Ms. Lewis concluded was "substantially equivalent employment" because the positions applied for were consistent with Dries's provided documentation of his skills and experience. Dries contends that "substantially equivalent employment" requires "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as Plaintiff's [former] position." *See Goldstine v. FedEx Freight Inc.*, 2020 WL 5500369, at *2 (W.D. Wash. Sept. 11, 2020) (quoting *Hughes v. Mayoral*, 721 F.Supp.2d 947, 968 (D. Haw. 2010). Nevertheless, whether the positions applied for actually were "substantially equivalent" remains a question for the trier of fact. *See Trout v. Time Inc. Severance Plan for Reg. Employees*, 2019 WL 6879752, at *9 (C.D. Cal. Sept. 6, 2019) ("Whether positions are comparable is not a legal dispute, but a factual one.") (internal quotations omitted); *Riggs v. Life Care Centers of Am., Inc.*, 2017 WL 9772962, at *4 (E.D. Wash. Oct. 26, 2017) ("The question of what constitutes 'substantially equivalent' employment is a question for the jury."); *Wooten v. BNSF Ry. Co.*, 2018 WL 2417858, at *5 (D. Mont. May 29, 2018), *report and recommendation adopted*, 2018 WL 4462506 (D. Mont. Sept. 18, 2018) (finding same).

Finally, though Ms. Lewis did not consider any possible stigma associated with being terminated from his employment at Sprinklr, or difficulties arising from the COVID-19 pandemic, neither analysis were necessary in order to render her opinion. Dries was in receipt of a job offer from another technology company within three months after he began job search

ORDER - 9

activities, and therefore, there is no evidence in the record demonstrating he was stigmatized by his termination from Sprinklr or that the COVID-19 pandemic affected his job search activities. Dries's job search activities also began in October 2019, well before early March 2020 when the COVID-19 pandemic began to affect the national and local economy, and there is no evidence his job opportunities were limited by the pandemic's effect afterwards.

In conclusion, Ms. Lewis's expert testimony is admissible. As noted at oral argument, Dries's concerns regarding Ms. Lewis's opinion generally go to weight of her testimony. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998) (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of [his or her] testimony.")). Plaintiff is free to cross-examine Ms. Lewis on any alleged deficiencies with her expert report at trial. *See Daubert*, 509 U.S. at 596; *see also Bluetooth SIG, Inc. v. FCA US LLC*, 468 F.Supp.3d 1342, 1349 (W.D. Wash. 2020) (quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F.Supp.2d 1053, 1069 (C.D. Cal. 2013)). ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.")).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (dkt. # 65) is DENIED. The Clerk is directed to send a copy of this Order to the parties.

\\

\\

\\

ORDER - 10

DATED this 18th day of December, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11